MILES E. BALDWIN *et al.*, Plaintiffs-Appellants, v. RONALD WOLFF, Defendant-Appellee.

First District (2nd Division)   No. 1—96—3697

Opinion filed January 13, 1998.

Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., of Chicago (James D. Adducci and Marshall L. Blankenship, of counsel), for appellants.

Rudnick & Wolfe, of Chicago (Stanley J. Adelman and David G. Lynch, of counsel), for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiffs Miles E. Baldwin and Irene Baldwin brought this action to obtain injunctive relief requiring defendant Ronald Wolff to produce the books and records of the Michigan-Chestnut Limited Partnership (Operating Partnership) and Michigan-Chestnut Investment Properties Ltd. (Investment Partnership) for inspection and copying by plaintiffs. The trial court entered judgment in favor of defendant. Plaintiffs appeal and we affirm.

On June 30, 1971, the Operating Partnership, a limited partnership, was formed among the 111 East Chestnut Corporation, as general partner, and certain limited partners. The Operating Partnership assumed a ground lease for property located at 111 East Chestnut Street and 830 N. Michigan Avenue, in Chicago, which became the Operating Partnership's only significant asset.

The Investment Partnership was a limited partnership that owned a limited partnership interest in the Operating Partnership. One of the limited partners in the Investment Partnership was the Irving L. Melroe Family Trust (Melroe). Melroe owned a 17.85% interest in the Investment Partnership. Defendant Ronald Wolff was a general partner of the Operating Partnership and the Investment Partnership.

In 1984, the Operating Partnership assigned its interest in the ground lease to a land trust in exchange for a wrap-around note. This note, secured by a mortgage interest in the leasehold of the property, became the Operating Partnership's only significant asset.

On January 2, 1985, the Operating Partnership was dissolved and Ronald Wolff and Stanley Fimberg were given the responsibility of collecting money due under the wrap-around note. At approximately the same time, the Investment Partnership was also dissolved and Ronald Wolff was assigned the responsibility of collecting money due from the Operating Partnership and distributing money to the Investment Partnership's former partners.

In 1985, Irving Melroe filed for bankruptcy. On April 30, 1990,

the trustee for Melroe's bankruptcy estate sold and assigned Irving Melroe's "right, title and interest to notes, interests in notes, and interests in partnerships known, or formerly known, as Michigan-Chestnut Partnership, Michigan-Chestnut Limited Partnership, or similar names, to Miles Edward Baldwin and Irene Baldwin as joint tenants with rights of survivorship."

The Baldwins gave Wolff written notification of the assignment. In July 1990, Wolff sent a distribution of the Investment Partnership to the Baldwins made payable to the "Irving L. Melroe Family Trust." On August 24, 1990, the trustee of the Melroe bankruptcy advised Wolff he had "sold all of the Bankruptcy Estate interest in the Michigan-Chestnut Partnership" to the Baldwins.

In 1993, the Michigan and Chestnut properties were sold and the ground lease was assigned to a developer who planned to convert the property to condominiums. As part of the transaction, Wolff agreed to subordinate the Operating Partnership's former partners' mortgage interest in the leasehold, and the wrap-around note became a second mortgage on the leasehold. In May 1994, the developer borrowed additional money to convert the property to condominiums and the wrap-around note became a third mortgage on the leasehold.

Around October 1994, the developer began to sell condominium units. With each unit sold, the value of the collateral securing the wrap-around note decreased, since each condominium unit was being sold free and clear. As of July 1996, the developer was several months in arrears in interest payments due and owing to the Operating Partnership.

Due to these facts, the Baldwins became concerned about the adequacy of security for the wrap-around note and about Wolff's conduct in negotiating the former partners' debt position and release of collateral. The Baldwins also were concerned with the expenditures for attorney fees made by the Operating Partnership. In addition, the Baldwins became concerned about the state of disrepair of the parking garage in the building.

On January 16, 1995, the Baldwins began requesting that Wolff provide certain information and documents regarding the Operating Partnership and the Investment Partnership. Wolff failed to produce this information.

On March 29, 1995, Wolff made a distribution to the Investment Partnership's former partners. Wolff sent a distribution to the Baldwins, naming the payee as "Irving Melroe Family Trust." The Baldwins returned the March distribution check to Wolff and requested that he issue a new check which named the Baldwins as payee. Wolff refused to issue a new check naming the Baldwins as payee and did

not give the Baldwins their share of the March distribution. In August 1995, Wolff made another distribution to the Investment Partnership's former partners. Wolff placed the amount of distribution that the Baldwins might have been entitled to in a special bank account until a determination could be made as to who was entitled to the funds.

On June 7, 1995, the Baldwins filed a complaint and a motion for preliminary injunction, requesting that the court order Wolff to immediately produce the books and records of the Investment and Operating Partnerships for their inspection. In count I of their second amended complaint, filed September 25, 1995, the Baldwins sought to inspect the books and records of the Investment and Operating Partnerships pursuant to sections 104 and 305 of the Revised Uniform Limited Partnership Act (the Act). 805 ILCS 210/104, 305 (West 1994). In count II of their complaint, the Baldwins sought the same relief under a theory of agency. In count III, which is not at issue in this appeal, the Baldwins sought to recover damages in the amount of the distributions that Wolff withheld from them.

The trial court denied the Baldwins' motion for a preliminary injunction. On July 31, 1996, the court conducted a trial on the merits. At the conclusion of trial, the court stated its finding that the Baldwins are not limited partners of the Investment Partnership and are not entitled to exercise any rights of a limited partner under the partnership agreement of the Investment Partnership. The trial court determined that the Baldwins have an assignment of a limited partnership interest, which they acquired at a bankruptcy proceeding, and that an assignee of a limited partnership interest, who is not a substitute partner, does not have a right to inspect the books and records of a limited partnership. The trial court therefore entered judgment in favor of defendant and against plaintiffs on counts I and II of the second amended complaint. The court further found that since the Baldwins are assignees of a limited partnership interest, they are entitled to all distributions to which the assigning limited partners would have been entitled. The trial court therefore entered judgment in favor of plaintiffs and against defendant on count III of the second amended complaint. The Baldwins appeal from the trial court's findings as to counts I and II of the complaint.

■ We must determine in this appeal whether the trial court properly held that the Baldwins have no right to inspect the books and records of the Investment and Operating Partnerships. The Act provides that a partner has a right to inspect the books and records of the partnership. 805 ILCS 210/104 (West 1994). However, section 702 of the Act provides that "[a]n assignment of a partnership inter-

est does not dissolve a limited partnership or, unless otherwise provided in the partnership agreement, entitle the assignee to become a partner or to exercise any rights of a partner." 805 ILCS 210/702 (West 1994).

The Baldwins claim that the Investment Partnership agreement in the instant case does indeed provide that an assignee becomes a substitute limited partner and thus has the right to inspect the books and records. The Baldwins rely on paragraph 21 of the agreement, which provides:

"The provisions of this agreement, including rights of approval, shall be binding upon and inure to the benefit of the personal representatives, heirs, successors and assigns of each party executing this agreement; provided, however, that nothing herein contained shall be construed in any way modifying provisions of Paragraphs 14 and 15 of the Agreement."

The Baldwins thus claim that paragraph 21 of the partnership agreement makes assignees substitute limited partners with the same rights as those of a limited partner.

However, as stated in paragraph 21 of the Investment Partnership agreement, nothing in that paragraph is to be construed as modifying paragraphs 14 and 15 of the agreement. Paragraph 14(a) of the Investment Partnership agreement provides:

"No partner shall sell, make any assignment, including an assignment for the benefit of his creditors or a transfer to a trustee or receiver for the benefit of his creditors, give away, pledge, hypothecate or otherwise dispose of his interest in the Partnership to any third party unless he has the consent of a majority in interest of the other partners."

Thus, the consent of the majority of the partners in the Investment Partnership was required for the Baldwins to become substitute limited partners.

The Baldwins claim that since the trial court found that there was an assignment of Melroe's partnership interest to the Baldwins, the court "must have determined that the consent requirement of Paragraph 14(a) was met or otherwise excused." We disagree. As the trial court noted, section 541(c)(1)(A) of the Bankruptcy Code invalidates restrictions on the transfer of the property so that all the interests of the debtor will become property of the estate. 11 U.S.C. § 541(c)(1)(A) (1994). However, section 541(c)(1)(A) does not invalidate restrictions as they apply to a subsequent transfer of property from the estate to a third party. *In re Smith*, 185 B.R. 285 (S.D. Ill. 1995). Thus, while the trustee in bankruptcy can make an assignment that would entitle the assignee to proceeds, it cannot make an assignment

that entitles an assignee to become a limited partner. The Bankruptcy Code, therefore, does not invalidate the restriction in paragraph 14(a) of the Investment Partnership agreement requiring an assignee to obtain consent of the majority of other partners before he may become a substitute limited partner.

The Baldwins nonetheless claim that Wolff is estopped from relying on the consent requirement in paragraph 14(a) of the Investment Partnership agreement, since Wolff treated the Baldwins as partners and failed to notify them that consent was required. An individual may be precluded by his act or conduct from asserting a right that he may otherwise have where his statements or conduct induces another to do something that he would otherwise not have done but for the statements or conduct of the other. *Osty v. M.R.V.S., Inc.*, 282 Ill. App. 3d 834, 668 N.E.2d 1009 (1996). The purpose of the equitable estoppel doctrine is to prevent fraud or injustice. *Osty*, 282 Ill. App. 3d at 837. In order to claim estoppel, a party must demonstrate that it reasonably relied to its detriment upon the conduct of another. *Illinois Wood Energy Partners, L.P. v. County of Cook*, 281 Ill. App. 3d 841, 667 N.E.2d 477 (1995); *Griffin v. Box*, 910 F.2d 255 (5th Cir. 1990).

The Baldwins claim that Wolff treated them as limited partners by meeting with them to discuss the business of the partnership, providing them with the same information given to the other limited partners, making distributions to them, and listing them on schedules of the limited partners. The Baldwins also point out that Wolff referred to the Baldwins in letters as limited partners. The Baldwins thus claim that, in reliance on Wolff's representations that they were limited partners, they did not obtain consent from the other partners to be deemed limited partners.

The Baldwins also claim that Wolff never advised them of the requirement that they obtain consent of the other partners and that, despite their repeated requests, Wolff did not provide them with a copy of the Investment Partnership agreement until ordered to do so by the court. Wolff, on the other hand, claims that he did in fact provide the Baldwins with a copy of the agreement during one of his meetings with the Baldwins, and they should have been aware that consent was necessary. The trial court resolved this factual dispute in favor of Wolff, and we find no basis to disagree with the trial court's resolution of this issue. We therefore find no evidence that the Baldwins relied to their detriment on any conduct of Wolff. The Baldwins also claim that even if they merely had an interest in receiving distributions from the Investment Partnership, and were not limited partners, they would nonetheless have a right to inspect

the records of the Investment and Operating Partnerships under the common law of agency. See *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Ill. App. 3d 75, 385 N.E.2d 376 (1979) (agent must act in good faith and make known to his principal all material facts within the agent's knowledge which in any way affect the transaction or subject matter of the agency). However, the Baldwins cannot obtain through agency law that which they are prohibited from obtaining through the Act and the Investment Partnership agreement.

Accordingly, the trial court order entering judgment in favor of Wolff is affirmed.

Affirmed.

TULLY and COUSINS, JJ., concur.