WEST SUBURBAN BANK, Plaintiff-Appellee and Cross-Appellant, v. ATTORNEYS' TITLE INSURANCE FUND, INC., *et al.*, Defendants-Appellants and Cross-Appellees.

Second District    No. 2—00—1093

Opinion filed December 19, 2001.

Joshua G. Vincent and Thomas R. Mulroy III, both of Hinshaw & Culbertson, of Chicago, for appellant Attorneys' Title Insurance Fund, Inc.

Patrick D. Porto, of McCoy, Kula & Wiemerslage, of Chicago, for other appellants.

Mark F. Kalina and John J. Pcolinski, Jr., both of Guerard, Kalina & Butkus, of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The parties appeal the trial court's decisions regarding the funds held in escrow by Attorneys' Title Insurance Fund. Defendants, Attorneys' Title Insurance Fund, Inc. (Attorneys' Title), and Coldwell Banker Stanmeyer Realtors and Coldwell Banker Honig Bell Realtors (collectively, Coldwell Banker), appeal the trial court's decision to grant the motion for summary judgment of plaintiff, West Suburban Bank, on its complaint seeking funds from an escrow account held by Attorneys' Title. Attorneys' Title appeals and West Suburban Bank cross-appeals the trial court's decisions denying both parties' requests for attorney fees. We affirm in part, reverse in part, vacate in part, and remand the cause.

The following facts are uncontroverted. On or about March 15, 1996, West Suburban Bank made two loans to Lombard Lodge 2350 Loyal Order of Moose (Moose Lodge), one for $560,000 and the other for $220,000. These loans were secured by mortgages on the property owned by the Moose Lodge located at 994 Lombard Road, Lombard, Il-

linois (Moose Lodge property). On April 3, 1996, these loans were recorded as liens upon the Moose Lodge property at the office of the Du Page County recorder of deeds.

On or about April 7, 1998, the Moose Lodge decided to sell the property and entered into an "Exclusive Listing Agreement" with Coldwell Banker Stanmeyer Realtors. Although the written agreement is not contained in the record, these facts are supported by an affidavit of the former president of Coldwell Banker Stanmeyer Realtors, Sergio Martinucci, and have not been disputed by any party. Coldwell Banker found a buyer, Anthony Hotko, who offered $700,000 for the property. The Moose Lodge accepted this price. The closing date for the sale of the property was scheduled for March 8, 1999.

On March 4, 1999, West Suburban Bank, through its attorneys, sent a letter to Coldwell Banker Stanmeyer, stating that the proceeds from the sale of the Moose Lodge property would be insufficient to pay off the mortgage in full and, therefore, no proceeds would be available to pay any liens asserted by Coldwell Banker Stanmeyer for its commission. The letter also stated:

"In the event that you claim a commercial real estate broker's lien, be advised the West Suburban Bank disputes such lien as being subject, subordinate, and inferior to West Suburban Bank's mortgage as provided by 770 ILCS 15/15. If you claim a lien, an amount equivalent to your lien claim will be deposited in escrow and you will be required to provide a release of your claim for lien at the closing as provided by 770 ILCS 15/20. If the dispute is not amicably resolved, West Suburban Bank will then file an action for judicial declaration or the parties' rights to the amount deposited in escrow, together with attorneys fees, costs, and prejudgment interest as provided by 770 ILCS 15/10(k)."

Prior to the closing, Coldwell Banker filed and recorded a lien against the Moose Lodge property in the amount of $35,000, its commission for the sale. West Suburban Bank then issued closing instructions and a closing statement to Attorneys' Title regarding its two prior mortgage loans given to the seller/Moose Lodge. The instructions indicated that West Suburban Bank would be issuing the buyer/Hotko two loans in the amounts of $560,000 and $190,000 and that these new loans would be secured as first and second liens, respectively, upon the newly purchased Moose Lodge property. The instructions contained provisions for the disbursement of the $700,000 sale price, including allocations for the payment of real estate taxes, record releases, title insurance, attorney fees, and $52,500 to be deposited in escrow, leaving $579,914.03 payable to West Suburban Bank.

On March 8, 1999, in accordance with these instructions, West

Suburban Bank received $579,914.03 (leaving a deficiency balance on the original mortgages in the amount of $201,268.11), and $52,500 was deposited in an escrow account with Attorneys' Title.

Prior to the closing, Attorneys' Title, the seller/Moose Lodge, and the buyer/Hotko entered into a "Title Indemnity-Escrow Agreement" wherein the buyer and seller agreed to deposit $52,500 in escrow with Attorneys' Title to satisfy Coldwell Banker's broker's lien. Further, the parties agreed to satisfy or remove the broker's lien prior to March 8, 1999. This escrow money was to "constitute a fund under the absolute control of [Attorneys' Title] to indemnify [Attorneys' Title] as herein provided and for the other purposes herein set forth." The agreement also provided: "In case of litigation involving the fund or the rights of any person or corporation hereunder, the cost, expense and attorney's fees of [Attorneys' Title] may be paid or retained by [Attorneys' Title] out of the fund." Coldwell Banker was not a party to the agreement.

Accordingly, Attorneys' Title issued a title insurance policy that insured that West Suburban's two new loans to the buyer/Hotko would receive first and second priority upon the newly purchased Moose Lodge property.

On March 12, 1999, West Suburban Bank issued a release of its original loans secured by mortgages issued to the Moose Lodge. This release was recorded on April 29, 1999. Coldwell Banker did not release its broker's lien.

On June 11, 1999, West Suburban Bank filed a complaint for declaratory relief against Coldwell Banker and Attorneys' Title seeking the recovery of the escrow funds and an order directing Coldwell Banker to execute and deliver a release of its broker's lien. In its answer, Coldwell Banker claimed that West Suburban Bank lost any claim to the escrowed funds when it released its mortgage liens. West Suburban Bank filed a motion for summary judgment. Coldwell Banker and Attorneys' Title filed responses and cross-motions for summary judgment; Attorneys' Title claimed that it was entitled to full custody and control over the escrow funds and that it was entitled to attorney fees and costs.

The trial court granted summary judgment in favor of West Suburban Bank and denied the cross-motions of Coldwell Banker and Attorneys' Title. Relying on the Commercial Real Estate Broker Lien Act (Act) (770 ILCS 15/1 *et seq.* (West 1998)), the trial court stated that section 20 of the Act did not require Coldwell Banker to release its lien. However, the trial court "extinguished" Coldwell Banker's lien and stated that West Suburban Bank was entitled to "all sums held in escrow." The court also stated that Attorneys' Title had no

property interest in the escrow fund. The trial court later denied Attorneys' Title's request for attorney fees and costs and West Suburban Bank's petition for attorney fees. Coldwell Banker and Attorneys' Title both filed timely notices of appeal, and West Suburban Bank filed a timely notice of cross-appeal.

On appeal, Coldwell Banker argues that the trial court erred by granting summary judgment in favor of West Suburban Bank and extinguishing Coldwell Banker's lien based on the Act. In response, West Suburban Bank argues that the trial court properly interpreted the Act.

■ A court should enter summary judgment if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291 (2000). A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999). When evaluating the facts, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483 (1998). We apply a *de novo* standard of review to the trial court's decision to grant summary judgment. *Jones*, 191 Ill. 2d at 291.

■ In interpreting statutory language, we must give effect to the intent of the legislature. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The best indication of the legislature's intent is the language of the statute in question. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. Thus, we will give clear and unambiguous terms their plain and ordinary meaning. *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

■ Section 10 of the Act provides in pertinent part:

"§ 10. Broker's lien.

(a) Any broker shall have a lien, upon commercial real estate or any interest in that commercial real estate, in the amount that the broker is due:

(1) under a written instrument signed by the owner of an interest in the commercial real estate or the owner's duly acknowledged agent; or

\* \* \*

(b) The lien under this Act shall attach to the commercial real estate, or any interest in the commercial real estate, upon:

(1) the broker being otherwise entitled to a fee or commission under a written instrument signed by the owner, buyer, tenant, or their respective duly authorized agent, as applicable; and

(2) *** the broker recording a notice of lien in the Recorder's Office, or the Office of the Registrar of Titles, of the county in which the commercial real estate is located prior to the actual conveyance or transfer of the commercial real estate against which the broker is claiming a lien. The lien shall attach as of the date of the recording of the notice of lien and does not relate back to the date of the written agreement." 770 ILCS 15/10 (West 1998).

■ The uncontroverted facts establish that Coldwell Banker had a valid lien under section 10 of the Act. It is uncontroverted that on or about April 7, 1998, Coldwell Banker and the seller/Moose Lodge entered into an "exclusive listing agreement" with Coldwell Banker Stanmeyer to sell the Moose Lodge property. It is also uncontroverted that Coldwell Banker found a buyer for the property, the buyer offered $700,000 for the property, that the seller/Moose Lodge accepted the offer, and that, under the terms of the agreement, Coldwell Banker was entitled to a commission of $35,000 from the sale. It is further undisputed that, before the closing of the sale, Coldwell Banker recorded its lien and the parties had notice of the lien. Therefore, under the clear and unambiguous language of section 10 of the Act, we determine that Coldwell Banker had a valid lien on the property.

■ ■ Contrary to West Suburban Bank's contention, we find nothing in the Act that required Coldwell Banker to release its lien and nothing in the Act that permitted the trial court to extinguish the lien. We agree with the trial court and West Suburban Bank that section 20 of the Act provides a procedure for the escrow of disputed funds to allow a closing of the sale of the property subject to a broker's lien. However, nothing in this or any other section of the Act required Coldwell Banker to release its lien in this case. Section 20 of the Act provides:

"Except as otherwise provided in this Section, whenever a claim for lien has been filed with the County Recorder or Registrar of Titles that would prevent the closing of a transaction or conveyance, an escrow account shall be established from the proceeds from the transaction or conveyance in an amount sufficient to release the claim for lien. The requirement to establish an escrow account, as provided for in this Section, shall not be cause for any party to refuse to close the transaction. These monies shall be held in escrow until the parties' rights to the escrowed monies have been determined by written agreement of the parties, a court of law, or other process as may be agreed to by the parties. *Upon funds in the amount of the claimed lien being escrowed, a release of the claim for lien shall be provided by the broker claiming the lien.* The parties are not required to follow this escrow procedure if

alternative procedures which would allow the transaction to close are available and are acceptable to the transferee in the transaction. *If the proceeds from the transaction are insufficient to release all liens claimed against the commercial real estate, including the broker's lien, then the parties are not required to follow this escrow procedure in the Section.*" (Emphasis added.) 770 ILCS 15/20 (West 1998).

The clear and unambiguous language of the section provides that a broker must release its lien when the claimed funds are escrowed. However, the section expressly provides that the section does not apply if the "proceeds from the transaction are insufficient to release all the liens claimed against the commercial real estate." 770 ILCS 15/20 (West 1998). Here, it is undisputed that the proceeds from the transaction were "insufficient to release all liens claimed against" the property. Even after West Suburban Bank released its original liens, it claimed that it was entitled to the escrowed funds to satisfy these liens. It is uncontroverted that the proceeds from the sale were not sufficient to release the liens claimed by West Suburban Bank and Coldwell Banker. Therefore, Coldwell Banker was expressly excluded from compliance with section 20 and was not required to release its lien.

■ We also agree with the trial court and West Suburban Bank that the bank's mortgage liens had priority over Coldwell Banker's liens. Section 15 of the Act provides in pertinent part, "Prior recorded liens and mortgages shall have priority over a broker's lien." 770 ILCS 15/15 (West 1998). However, it is uncontroverted that West Suburban Bank released its liens and, therefore, extinguished any priority and any interest it had in the property. It is axiomatic that the release of a mortgage extinguishes the lien. See *Daiwa Bank, Ltd. v. La Salle National Trust, N.A.*, 229 Ill. App. 3d 366, 385 (1992). Accordingly, when West Suburban Bank filed its complaint for declaratory relief, the only party that had an existing lien was Coldwell Banker. Thus, the trial court erred by extinguishing Coldwell Banker's lien and by granting West Suburban Bank's summary judgment motion and denying Coldwell Banker's summary judgment motions.

■ In addition, we agree with Attorneys' Title that equitable estoppel arises here to estop West Suburban Bank from claiming any rights to the fund. Under the doctrine of equitable estoppel, an individual may be precluded by his conduct from asserting a right he may otherwise have where his statements or conduct induces another to do something that he would otherwise not have done but for the individual's statements or conduct. *Baldwin v. Wolff*, 294 Ill. App. 3d 373, 378 (1998). Here, West Suburban Bank sought title insurance

from Attorneys' Title. In order to obtain this title insurance, West Suburban Bank released its liens on the property and instructed Attorneys' Title to create an indemnity fund to satisfy Coldwell Banker's broker's lien. In response to West Suburban Bank's conduct, Attorneys' Title issued a title insurance policy to West Suburban Bank insuring West Suburban Bank first priority on its loans to the new buyer/Hotko. Clearly, Attorneys' Title would not have issued title insurance and would not have established the indemnity fund containing only $52,500 if it knew that West Suburban Bank would claim rights to the fund for liens that it had already released. Accordingly, West Suburban Bank is estopped from asserting any rights to the indemnity fund.

▪ West Suburban Bank cross-appeals the trial court's decision denying its petition for attorney fees and costs. West Suburban Bank argues that attorney fees and costs are mandatory to any prevailing party under section 10(l) of the Act. 770 ILCS 15/10(l) (West 1998). Due to our decision here, West Suburban Bank is not the prevailing party and is not entitled to attorney fees. Therefore, the trial court's decision denying the petition is affirmed.

In its appellate brief, Coldwell Banker also asks this court to stay the two-year statute of limitations to enforce the commercial lien. It is well settled that arguments raised for the first time on appeal are waived. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 324 (1998). Further, arguments must be supported by relevant authority. 177 Ill. 2d R. 341(e)(7). Because Coldwell Banker raises this issue for the first time on appeal and does not support it with any authority, we need not address this issue.

▪ Attorneys' Title appeals the trial court's decision denying its petition for attorney fees. Attorneys' Title argues that the terms of the title indemnity agreement granted Attorneys' Title the right to recover attorney fees and costs. The agreement provides, "In case of litigation involving the fund or the rights of any person or corporation hereunder, the cost, expense and attorney's fees of the company may be paid or retained by the company out of the fund." This provision appears to allow Attorneys' Title's fees. However, due to our disposition, the rights of the parties to the agreement and their rights to the fund have not been fully and finally settled, and we are unable to address the merits of this issue at this time. Therefore, we vacate the trial court's decision denying Attorneys' Title's request, and the cause is remanded for further proceedings consistent with this disposition.

The judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and vacated in part, and the cause is remanded.

Affirmed in part, reversed in part, and vacated in part; cause remanded.

GEIGER and CALLUM, JJ., concur.